UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | 3:23-cr-00020-SVN |
| ) | |
| v.        ) | |
| ) | |
| ZAN HAIRSTON   ) | |
| ) | |
| ) | January 29, 2024 |

**RULING ON DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Sarala V. Nagala, United States District Judge.

On February 16, 2023, a grand jury sitting in the District of Connecticut indicted Defendant Zan Hairston on one count of possession of a firearm after a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Hairston now moves to dismiss the indictment with prejudice under Federal Rule of Criminal Procedure 12(b)(1), claiming that, after *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the charge violates his right to bear arms under the Second Amendment. For the following reasons, Hairston's motion is DENIED.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**[1]

Hairston's relevant criminal history is as follows. On July 6, 2016, he was convicted in Superior Court for the State of Connecticut of (1) conspiracy to commit robbery in the first degree with a firearm, in violation of Conn. Gen. Stat. § 53a-134(a)(4), and (2) burglary in the second degree, in violation of Conn. Gen. Stat. § 53a-101. Indictment, ECF No. 1. He was sentenced to a combined term of three years imprisonment, followed by three years of probation. Gov't Opp., ECF No. 32 at 3. Approximately one month after being released from state prison, however,

---

[1] For purposes of deciding a motion under Federal Rule of Criminal Procedure 12(b)(1), "a court views the indictment as a whole and assumes its factual allegations to be true." *United States v. Litvak*, No. 3:13-CR-19 (JCH), 2013 WL 5740891, at *2 (D. Conn. 2013). In this background section, the Court cites to facts outside the indictment and provided in the Government's opposition for additional context, but it does not assume them to be true.

Hairston was arrested on state firearms charges. *Id.* On June 7, 2019, he was convicted of (1) criminal possession of a firearm, in violation of Conn. Gen. Stat. § 53a-217, and (2) illegal possession of a weapon in a motor vehicle, in violation of Conn. Gen. Stat. § 29-38. ECF No. 1. He was sentenced to three years on the first charge, and on the second, 10 years in jail, execution suspended after 51 months, followed by three years of probation. He completed his second prison sentence on October 28, 2022. ECF No. 32 at 3.

The Government avers that, two months after Hairston's release, the Bridgeport Police Department received a report from his former romantic partner that he had brandished a firearm during a FaceTime call with her. *Id.* at 1. According to the Government, officers located Hairston on January 9, 2023, and, following a foot chase, located a Glock magazine with 17 round capacity, holding 13 rounds of ammunition, underneath where he was laying on the ground, and a Taurus TX .22 firearm, with a magazine containing 20 rounds of ammunition, located approximately two feet from where he had been laying. *Id.* at 2. Further, the Government states that law enforcement found a second firearm, a Glock 26 Gen4, several feet away. *Id.* Hairston apparently later admitted to investigators that "I had my Taurus," but denied knowing anything about the Glock firearm or magazine. *Id.*

Hairston was charged in state court with criminal possession of a firearm in violation of Conn. Gen. Stat. § 53a-217; interfering with an officer, in violation of Conn. Gen. Stat. § 53a-167a; carrying a pistol without a permit, in violation of Conn. Gen. Stat. § 29-35(a)); burglary in the third degree, in violation of Conn. Gen. Stat. § 53a-103; threatening in the first degree, Conn. Gen. Stat. § 53a-61aa; and illegal possession of a large capacity firearm, in violation of Conn. Gen. Stat. § 53-202w(c)(2). The state charges remain pending.

2

On February 16, 2023, a grand jury sitting in the District of Connecticut indicted Hairston on one count of possession of a firearm after a felony conviction in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Specifically, Defendant is charged with knowingly possessing a Taurus TX .22 firearm on January 9, 2023, in the District of Connecticut, despite having been previously convicted of four crimes each punishable for a term exceeding one year: conspiracy to commit robbery in the first degree with a firearm, in violation of Conn. Gen. Stat. § 53a-134(a)(4), on July 6, 2016; burglary in the second degree, in violation of Conn. Gen. Stat. § 53a-101, on July 6, 2019; illegal possession of a weapon in a motor vehicle, in violation of Conn. Gen. Stat. § 29-38, on June 7, 2019; and criminal possession of a firearm, in violation of Conn. Gen. Stat. § 53a-217, on June 7, 2019. ECF No. 1.

## II. LEGAL STANDARD

Hairston timely filed the instant motion to dismiss the indictment under Federal Rule of Criminal Procedure 12(b)(1), which permits defendants to file pretrial motions raising "any defense, objection, or request that the court can determine without a trial on the merits." *United States v. Sampson*, 898 F.3d 270, 278–79 (2d Cir. 2018). "In other words, Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds." *United States v. Ahmed*, 94 F. Supp. 3d 394, 404 (S.D.N.Y. 2015).

## III. THE SECOND AMENDMENT

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the U.S. Supreme Court held that this amendment confers an individual right to bear arms, and "elevates above all other

3

interests the rights of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635.

After *Heller*, courts of appeal coalesced around a two-step framework for assessing Second Amendment challenges. First, the government would attempt to "justify its regulation by 'establish[ing] that the challenged law regulates activity falling outside the scope of the right as originally understood.'" *Bruen*, 597 U.S. at 18 (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)). If the court disagreed, and found that the law fell within that scope, "courts analyze[d] 'how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right.'" *Id.* (same). The court would apply strict scrutiny if the law came close to the "core," or intermediate scrutiny if it did not. *Id.*

The Supreme Court emphatically rejected the second step of this analysis in *Bruen*, stating it is "one step too many." *Id.* at 18. There, the Supreme Court struck down a New York state requirement that individuals demonstrate "proper cause" when applying for a concealed carry license, or a "special need" for self-protection outside the home. *Id.* at 11. In so doing, *Bruen* firmly rejected the means-end framework that the Second Circuit (the court below) had adopted and applied after *Heller*, in favor of one rooted in the text and history of the Second Amendment. *Id.* at 19.

Instead, in *Bruen*, it held that "[t]he test that we set forth in *Heller* and apply today requires courts to assess whether modern firearm regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26. Therefore, courts must first examine whether the "Second Amendment's plain text covers" the conduct proscribed by the challenged regulation. *Id.* at 17. "When the Second Amendment's plain text covers an individual's conduct, the Constitution

presumptively protects that conduct." *Id.* If it does, then "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

In considering the nation's history of firearm regulation, courts must begin by asking whether the modern regulation "addresses a general societal problem that has persisted since the 18th century.'" *Id.* at 26. If so, the inquiry is "fairly straightforward" as "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* If not, and the regulation "implicat[es] unprecedented societal concerns or dramatic technological change," a "more nuanced approach" is required. *Id.* at 27. The Court must "determin[e] whether a historical regulation is a proper analogue for a distinctly modern firearm regulation" because it is "'relevantly similar.'" *Id.* at 29.

Although the Supreme Court did not "provide an exhaustive survey of the features that render regulations relevantly similar," it identified "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* It noted that "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry." *Id.* at 30 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010)). This "analogical reasoning" is "neither a regulatory straightjacket nor a regulatory blank check"; "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30 (emphasis in original).

IV.  **DISCUSSION**

For the reasons described below, the Court finds that § 922(g)(1) is constitutional.

A.  <u>Type of Challenge</u>

Initially, the Court notes that while Hairston specifically invokes only an as-applied challenge in his motion to dismiss, he fails to provide any meaningful analysis why the statute is unconstitutional only as applied to him, and not in all instances.  *See* Def.'s Mot. Dismiss, ECF No. 31-1 at 1 ("As applied to Mr. Hairston, these statues are constitutional"); Def.'s Reply, ECF No. 33 at 1 ("Mr. Hairston contends 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him"). He does not, for instance, advance any arguments why he should be treated differently than other felons because of the particular felonies of which he has previously been convicted.  Indeed, both his opening and reply briefs focus on felon disarmament generally.

The Second Circuit has yet to address whether an as-applied challenge is available under the Second Amendment, and other circuit courts of appeal have concluded that one is not.  *See United States v. Gonzalez*, No. 1:23-cr-18-MKV, 2024 WL 96517, at *4 (S.D.N.Y. Jan. 9, 2024) (citing *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023), and *Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023)).  Perhaps for this reason, the Government interprets Hairston's motion as mounting both facial and as-applied challenges.  ECF No. 32 at 5.  As Hairston's arguments effectively mount a facial challenge, and because the availability of an as-applied challenge is uncertain, the Court first construes the motion as a facial challenge.

For the reasons described below, the Court finds that § 922(g)(1) is a constitutional restriction on the right of any felon to possess a firearm under binding Second Circuit precedent. The Court also addresses Hairston's as-applied challenge, assuming one is available, and concludes it must be denied as premature, given a lack of development of the record as to the circumstances surrounding Hairston's prior convictions.

B. Section 922(g)(1) is constitutional under binding Second Circuit precedent

The Second Circuit has yet to address the constitutionality of § 922(g)(1), or any other related provision, after *Bruen*. But the Second Circuit previously held in *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013) (*per curiam*), that § 922(g)(1) does not violate the Second Amendment. The Second Circuit reasoned that in *Heller*, and later in *McDonald*, the Supreme Court "clearly emphasized" that its holdings "should not 'be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *Bogle*, 717 F.3d at 281 (quoting *Heller*, 554 U.S. at 626); *see also id.* (quoting *McDonald*, 561 U.S. at 787, that "[w]e made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons . . . .").

The Court finds that *Bogle* remains good law after *Bruen*. District courts are bound by Second Circuit precedent until it is "overruled either by an en banc panel of [the Second Circuit] or by the Supreme Court." *United States v. Peguero*, 34 F.4th 143, 158 (2d Cir. 2022). The "'precise question for this Court,'" then, "'is not whether, by [the Court's] own analysis,' *Bruen* supports a finding that Section 922(g)(1) is unconstitutional, but whether *Bruen* 'so conclusively supports that finding that the Second Circuit or Supreme Court is all but certain to overrule' *Bogle*." *Gonzalez*, 2024 WL 96517, at *4 (quoting *United States v. Emmenegger*, 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004)). The Court, like all district courts in the Second Circuit that have addressed this question, cannot conclude it does.

First, *Bogle* involves an entirely different provision of law than that addressed in *Bruen*—the one squarely at issue here, § 922(g)(1)—and, notably, *did not* apply the "means-end" test rejected by the Supreme Court in *Bruen*. Rather, *Bogle* relied on unequivocal statements in *Heller* and *McDonald* that restrictions on the possession of firearms by felons are valid and

7

"longstanding." *See Bogle*, 717 F.3d at 281 (quoting *Heller*, 554 U.S. at 626 and *McDonald*, 561 U.S. at 787). *Bruen* does not cast doubt on these statements.

To the contrary, *Bruen* is consistent with those two cases. The Supreme Court was careful to state in *Bruen* that it is simply has "made the constitutional standard endorsed in *Heller* more explicit." *Bruen*, 597 U.S. at 8–9, 31 (emphasis added). Indeed, three members of the *Bruen* majority wrote that its holding did not disturb *Heller* or *McDonald*. *See id.* at 72 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 81 (Kavanaugh, J., concurring, joined by Roberts, C.J.) ("Nothing in [the Court's] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" set forth in *Heller* and *McDonald*).

Hairston nonetheless argues that *Bruen* represents a revolutionary change, and cites to the Second Circuit's recent statement in *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023), that *Bruen* "abrogate[ed] our circuit precedent . . . and the general approach we took to Second Amendment claims." *Id.* at 298. But *Antonyuk* confirms only that the means-end framework previously used by the Second Circuit is no longer valid and, in fact, offers further support for the proposition that *Bruen* did not overturn *Bogle*. In *Antonyuk*, plaintiffs raised several Second Amendment challenges to New York's Concealed Carry Improvement Act, a comprehensive state law passed in the wake of *Bruen*. The Second Circuit upheld, as consistent with *Bruen*, the requirement that applicants for in-home and concealed-carry licenses demonstrate "good moral character" under N.Y. Penal L. § 400.00(1)(b). The Second Circuit reiterated how, as in *Heller* and now again in *Bruen*, "the Supreme Court has repeatedly admonished that the Second

8

Amendment protects the rights of *law-abiding and responsible* citizens." *Id.* at 314 (emphasis added).

Every district court within the Second Circuit to consider the issue has held that § 922(g)(1) remains constitutional under *Bogle*. *See, e.g.*, *United States v. D'Angelo*, No. 23 cr 327 (PGG), 23 Cr. 427 (PGG), 2023 WL 9056404, at *4 (S.D.N.Y. Dec. 31, 2023) ("*Bruen* does not cast doubt on *Bogle*'s holding."); *United States v. Sanders*, No. 23-cr-78(KAM)(RML) at *3 (E.D.N.Y. Dec. 19, 2023) ("The Court is not convinced that *Bruen* will almost inevitably prompt the Second Circuit to overrule *Bogle*."); *United States v. Georges*, No. 23-cr-10 (AWT) (D. Conn. Nov. 9, 2023), ECF No. 32 at 3 ("The defendant's motion is being denied because the court is not persuaded that *Bogle* is no longer controlling precedent after *Bruen*); *United States v. Hampton*, No. S2 21 Cr. 766 (JPC), 2023 WL 3934546, at *1 (S.D.N.Y. June 9, 2023) ("[T]he Second Circuit upheld the constitutionality of section 922(g)(1) in *Bogle*, and that precedent has not been disturbed by *Bruen*."); *United States v. Garlick*, No. 22-CR-540 (VEC), 2023 WL 2575664, at *5 (S.D.N.Y. Mar. 20, 2023) ("*Bruen* does not alter the holding of *Bogle*."). The few district courts to consider the issue after *Antonyuk* have come to the same conclusion. *See e.g.*, *Gonzalez*, 2024 WL 96517, at *4; *United States v. Chisholm*, No. 23-CR-200 (NSR), 2024 WL 196711, at *3 (S.D.N.Y. Jan. 18, 2024). For the reasons discussed, the Court finds this weight of authority persuasive here.[2]

C. Section 922(g)(1) is constitutional under *Bruen*

Even if *Bogle* did not compel the denial of Hairston's motion, the Court would deny the motion independently under *Bruen*. In analyzing this issue, the Court finds instructive the opinions of the courts of appeal that have considered the question, since the Second Circuit has not.

---

[2] The Court notes that the Second Circuit heard oral arguments on this issue on May 8, 2023, in *Zherka v. Garland*, No. 22-01108, and on November 29, 2023, in *United States v. Thawney*, No. 22-01399. Another appeal raising the issue, *United States v. Brillon*, No. 22-02956, is on submission as of January 29, 2024. At the time of this ruling, however, none of these appeals has been decided.

Two circuit courts, the Eighth Circuit in *United States v. Jackson*, and the Tenth Circuit in *Vincent v. Garland*, have concluded that § 922(g)(1) is constitutional in all applications. As the Eighth Circuit explained in *Jackson*, "[h]istory shows that the right to keep and bear arms was subject to restrictions that included prohibitions on possession by certain groups of people," and *Bruen* "re-affirmed" that "the right is 'subject to certain reasonable, well-defined restrictions.'" 69 F.4th at 501–02 (quoting *Bruen*, 597 at 70). In *Vincent*, the Tenth Circuit likewise held that *Bruen* did not abrogate Tenth Circuit precedent upholding the constitutionality of § 922(g)(1). 80 F.4th at 1202 ("*McCane* instead upheld the constitutionality of the federal ban for *any* convicted felon's possession of a firearm." (emphasis in original)).

By contrast, the Third Circuit found § 922(g)(1) to be unconstitutional as applied to a nonviolent defendant in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (*en banc*). In *Range*, the defendant's prior felony conviction was for making false statements on a food stamps application. The Third Circuit could not find "that our Republic has a longstanding history and tradition of depriving people like Range of firearms," while emphasizing that its decision was "a narrow one." *Id.* at 106. In rejecting the Government's argument that federal firearms laws have long prohibited the possession of firearms by felons, the court noted that the earliest such law passed in 1938 "applied only to *violent* criminals." *Id.* at 104 (emphasis in original). The court also rejected other historical arguments made by the Government. *Id.* at 104–06. Therefore, the court concluded that § 922(g) was unconstitutional as applied to the defendant, given his nonviolent prior offense. *Id.* at 106.[3]

---

[3] The Fifth Circuit has also held that § 922(g)(8), which prohibits the possession of a firearm while subject to a domestic violence restraining order, is facially unconstitutional. *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 143 S. Ct. 2688 (June 30, 2023). Further, the Fifth Circuit ruled that § 922(g)(3), which prohibits the possession of a firearm by "an unlawful user of or addicted to any controlled substance," is unconstitutional as applied to a sober and nonviolent drug user. *United States v. Daniels*, 77 F.4th 337, 340 (5th Cir. 2023).

10

After surveying these cases and their holdings, the Court concludes that § 922(g) is facially constitutional under *Bruen*. Initially, the Court agrees with Hairston and sister district courts that felons fall into the definition of "the people" protected by the plain text of the Second Amendment. *Bruen*, 597 U.S. at 17. The Government cites to *Bruen* to argue that "the people" refers only to "ordinary, law-abiding citizen[s]." *Bruen,* 597 U.S. at 31. But *Bruen* does not define "the people" in this context; it simply noted that it was undisputed that the petitioners there were part of "the people." *Id.* As the Supreme Court noted in *Heller*, "in all six other provisions of the Constitution [besides the Second Amendment] that mention 'the people,' the term unambiguously refers to *all* members of the political community, not an unspecified subset." 554 U.S. at 580 (emphasis added). There is no basis to find that felons are therefore not part of the "political community" for purposes of the Second Amendment. The Court thus finds that the Second Amendment's plain text presumptively protects Hairston's right to bear arms. *See also United States v. Mitchell*, No. 1:23-cr-00198 (ALC), 2023 WL 8006344, at *2 (S.D.N.Y. Nov. 17, 2023) ("As such, Defendant's possession of a gun is conduct covered by the Second Amendment's plain text, and 'the people' in the text of the Second Amendment includes all members of the political community."); *United States v. Davila*, 23-cr-292 (JSR), 2023 WL 5361799, at *2 (S.D.N.Y. Aug. 22, 2023) ("There is no basis for reading 'the people' in the text of the Second Amendment to exclude felons.").

That said, the Government has met its burden to justify § 922(g)(1) by demonstrating that it is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. Initially, Hairston argues that the Government must identify a "distinctly similar" analogue to § 922(g)(1), rather than only a "relevantly similar" one, because crime is "a general societal problem that has persisted since the 18th century." *Id.* at 26. Hairston's position tends to minimize the "unprecedented societal concerns" and "dramatic technological changes" that have occurred

11

since the Founding with regards to gun violence, however.  *Id.* at 27.  Specifically, "the lethality of today's weaponry, the ubiquity of gun violence, the size and anonymity of the population, and the extent of interstate travel were unknown at the Founding."  *Davila*, 2023 WL 5361799, at *5 (quoting *Range*, 69 F.4th at 120 (Krause, J., dissenting)).  The Court need not decide which standard applies because, regardless of whether the Court considers "distinctly similar" or "relevantly similar" historical regulations, *Bruen* emphasizes that "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*," *Bruen*, 597 U.S. at 30, and the Government has done so.

The Government points to historical analogues to § 922(g)(1) in English and early American laws categorically excluding certain categories of people based on a judgment that they were not law-abiding, and in laws demonstrating the severity of Founding-era felony punishment.  First, the Government points a provision in the English Bill of Rights disarming Catholics who did not renounce their faith and swear allegiance to a Protestant king.  *See also Davila*, 2023 WL 5361799, at *3 (citing 1 Wm. & Mary c. 15, in 6 The Statutes of the Realm 71–72 (1688), and Nicholas J. Johnson et al., Firearms Law and the Second Amendment: Regulation, Rights, and Policy 174 (3d Ed. 2022)).  This tradition of disarming "untrustworthy" people continued in the American colonies, where early American "[l]aws disarming groups such as slaves, freed blacks, and Indians, and those of mixed-race ancestry were common."  *Davila*, 2023 WL 5361799, at *3 (citing Saul Cornell*,* A Well-Regulated Militia:  The Founding Fathers and the Origins of Gun Control in America 28–29 (2006)); *see also Bruen*, 597 U.S. at 60–63 (discussing Reconstruction-era laws).  At least one district court has held that these categories of laws cannot justify today's felon-in-possession law.  *See Mitchell*, 2023 WL 8006344 at *5–6 (noting that the Government

12

cannot satisfy *Bruen*'s demand for analogical reasoning by relying on "irrational and unjustified regulations in English and this country's histories founded at their core on discrimination").

But the Government also more persuasively identifies several Founding-era laws demonstrating the severe consequences of committing a felony. For example, in 1788, New York passed a law providing that anyone convicted of counterfeiting, burglary, robbery, arson, or malicious maiming and wounding is "liable to suffer death" and "shall forfeit to the State, all his, or her good and chattels, and also all such lands, tenements, and hereditaments[] . . . at the time of any such offence committed, or at any time after." 2 *Laws of the State of New York Passed at the Sessions of the Legislature Held in the Years 1785, 1786, 1787, and 1788, Inclusive* 664–66 (1886), available at https://babel.hathitrust.org/cgi/pt?id=uc1.b4375239&view=1up&seq=7. Until 1800, states authorized "the complete forfeiture of a felon's estate." *Mitchell*, 2023 WL 8006344 at *6. Although these laws are not "twin[s]" to § 922(g)(1), they need not be; it stands to reason that someone sentenced to death or ordered to forfeit all their property after a felony conviction is effectively disarmed as well. *See id.*; *see also United States v. White*, No. 23-CR-140 (NSR), 2023 WL 6066201, at *6 (S.D.N.Y. Sept. 18, 2023) (discussing historical analogues and concluding that "[i]t is a difficult row to hoe to suggest that the generation that drafted and enacted the Second Amendment could countenance capital punishment for a non-violent felony, but not a prohibition on the possession of arms and ammunition").[4]

The Court holds that the Government has sustained its burden of demonstrating that § 922(g)(1) is consistent with our country's historical tradition of firearm regulation. For this reason,

---

[4] While Hairston cites to a handful of out-of-circuit district court rulings finding that § 922(g)(1) does not pass *Bruen*'s test, including in his notice of supplemental authority, none are controlling. The weight of district court authority across the country is to the contrary. *See* Gov't Opp. Br. at 13–14 n.4 (collecting cases).

the Court finds that § 922(g)(1) remains a constitutional prohibition on the right of felons to possess firearms after *Bruen*.[5]

        D.      <u>Hairston's as-applied challenge is premature</u>

For the reasons described above, § 922(g)(1) is a constitutional restriction on the Second Amendment rights of felons under *Bogle* and *Bruen*. Nothing in *Bogle* or *Bruen* suggest that as-applied challenges, or a felony-by-felony individualized inquiry, is required. The Court is also mindful that allowing a regime of as-applied challenges to § 922(g)(1) may create "an unwieldy and unpredictable new body of law." *Quarles v. United States*, 139 S. Ct. 1872, 1881 (2019) (Thomas, J., concurring).

In an as-applied challenge, a court must analyze "the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day, LLC, v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). As noted above, Hairston makes no distinct arguments about his prior convictions that support an as-applied challenge, despite framing his argument as such. For instance, Hairston has supplied no facts about the circumstances of his underlying felony convictions; the only information available to the Court is the specific charges identified in the indictment: conspiracy to commit robbery in the first degree with a firearm, in violation of Conn. Gen. Stat. § 53a-134(a)(4); burglary in the second degree, in violation of Conn. Gen. Stat. § 53a-101; illegal possession of a weapon in a motor vehicle, in violation of Conn. Gen. Stat. § 29-38; and criminal

---

[5] The Court also cannot simply disregard that *Heller* and *McDonald* endorse the longstanding prohibitions on the possession of firearms by felons. *Heller*, 554 U.S. at 626 ("The Court's opinion should not be taken to cast doubt on the longstanding prohibits on the possession of firearms by felons . . ."); *McDonald*, 561 U.S. at 787 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons…."). While Hairston contends these statements are *dicta*, the Court is hard-pressed to find them irrelevant. *Bruen*'s frequent invocation of the term "law-abiding citizen" likewise suggests that regulations prohibiting felons from possessing firearms may be viewed differently than those that regulate the conduct of "law-abiding citizens."

14

possession of a firearm, in violation of Conn. Gen. Stat. § 53a-217. Because Hairston has not sufficiently developed the record on this issue, the Court rejects his as-applied challenge as premature. *See United States v. Baker*, No. 23-CR-6087CJS, 2023 WL 5511343, at *4 (W.D.N.Y. July 12, 2023) (collecting cases denying as-applied challenges to provisions of § 922(g) as premature when there is an undeveloped record).

V.   CONCLUSION

For the reasons explained in this Ruling, Hairston's motion to dismiss the indictment is DENIED. Jury selection remains scheduled for **February 27, 2024,** with evidence to begin immediately thereafter. The parties shall submit a joint trial memorandum and any motions *in limine* by **January 30, 2024**.

**SO ORDERED** at Hartford, Connecticut, this 29th day of January, 2024.

                                                    */s/ Sarala V. Nagala*
                                                  SARALA V. NAGALA
                                                  UNITED STATES DISTRICT JUDGE